and Mr. Fodeman, you've reserved two minutes for rebuttal, so that gives you eight out of the gate. Just give us one second so we can get this set. All right, the floor is  Thank you, Your Honor. Good morning, and may it please the Court. Mo Fodeman for the appellate Tyquan Jackson. Your Honors, this was a two-day gun possession trial, and it was a close one. The jury deliberated longer than the trial lasted, and amidst those deliberations asked for additional instructions on reasonable doubt. And this was only after the trial court allowed the government to introduce Mr. Jackson's 2015 conviction for essentially the same offense, along with the circumstances of the No, I was wondering this, Mr. Fodeman. Does the length of the jury's deliberation, is that something that we're supposed to put, give weight to? Well, I think it reflects the closeness of this case, and I'll talk further about why I don't think this was harmless in that context. But I think it goes to the, it suggests that the jury was grappling with the closeness of the evidence here. Had they returned a verdict in three minutes, it would be hard, we'd be hard-pressed to say this was a hard case for them. Right, but I mean, but I'm not sure that the inverse is necessarily, you know, indicative of anything. There might be a lot of reasons why the jury's going slow on things that they don't tell us. In any event. In any event, yes. And of course, as I mentioned, there also was the request for reasonable doubt. So someone in there, we don't know how many, but someone was struggling. And as I was saying, it wasn't simply the 2015 conviction. It was the circumstances of that offense, as well as the firearm involved in that offense, and even a second firearm possessed by someone else in the car with Mr. Jackson. You say that the, you argue that the 2015, his possession of a, of a model that, that followed the Raven 25, a model made by the company that succeeded to the Raven company after its bankruptcy, his possession of that gun back in four years earlier had no relevance. It was inadmissible in this trial. So it was error. So let me ask you a question. Well, first of all, the rule 404B2, I think it is, explicitly says that evidence of a prior crime is admissible to show identity. Right? Now, I'm going to ask you a hypothetical. Supposing that, supposing that the gun they found in the driveway had a very unusual thing on it, like an etched, an etched drawing of a smiley face with big ears, and the gun that he possessed four years earlier had had an almost identical smiley face with big ears carved on it. Would that have been admissible evidence? I think you're a lot closer, Judge, and I think that's... But it would have been admissible. I think we would have a... It very well might be, and it would be admissible. But you're saying, you're acknowledging that a rarity, a rarity of the object, something, an identifying feature that is less likely to be true in just the ordinary gun possession would make it admissible. Well, I want to be careful here. Here we're dealing with, here we're dealing with a Raven 25. The company went out of business in 1991, and the guns are quite rare. That statistical evidence of collections of guns show that 1% of guns retrieved are Raven 25s. Why isn't the similarity of the Raven 25 to the successor model that he possessed, and the other person in the car with him had the same gun, the Raven 25, why isn't that admissible to show identity by showing a preference for this quite unusual gun? Doesn't it make it more likely that he is the person who threw it than, for example, if he had simply had a gun back in 2025, a Colby or whatever? A couple points, Judge. First of all, I agree with you. If there was something so unique, so individualized, to make it such that this was the calling card of the defendant. In a case where the defendant disputed identity, I wasn't at the scene in a robbery case. I wasn't there. I was arrested later. Identity is always in dispute. Your defendant disputed identity. He disputed that it was he who threw the gun there. He said that wasn't me. There was no dispute that he was the person there. The question was who possessed the gun. No, no, no. Yes, but he disputed that he was the person who put the gun there. That was the offense. The gun wasn't being there. Well, I'll put it to you this way, Your Honor. If someone picked up that gun with your smiley face and picked it up and it tended to show, huh, this is Mr. Jackson must be Mr. Jackson who's involved here because he's the smiley face gun guy, then yes. But not here. And even the district judge rejected that theory in the pretrial motions. She said there is nothing sufficiently unique here to admit this old conviction based on identity. And, Your Honor, I take issue with the underlying premise that this is such a unique gun and, therefore, it goes to identity. So you're saying that the likelihood that it was he is no different than if the gun possessed back in 2025 had been a completely different gun? I would ask you to ask the government. To ask them what inference do you really want the jury to think in their head? Because, Your Honor, this was agreed upon that it was a street gun, that these guns are not available in stores. Mr. Jackson didn't go to the store to buy the gun. He got it on the street. Are you suggesting, is the government suggesting that when they say he had access to guns, he had the black he had access to the black market for Ravens, that on the streets of New York and elsewhere there's a bad guy selling just Ravens? I'm not asking you about access. I'm asking you about identity. I don't think, I mean, I know courts have relied on access, but, I mean, that seems to me a far weaker argument because guns can be bought. I mean, a gun can be bought either on the street or in stores. This is a very slippery slope, Judge. I mean, what if it was a 9-millimeter and a 9-millimeter? Are then we to say, well, then it's Mr. Jackson because it's a 9-millimeter? And, by the way, Judge, it's not even the same gun. If you look at the exhibits, it's not like they're identical. One's black, one's silver, one's got a wooden handle, one doesn't. What does that have to do with it? That suggests that what happens, it doesn't add to the likelihood that the possession here was Mr. Jackson. And remember the government's theory here. It's laid bare on page 31 and 32 of their brief. According to the government, prior access to firearms is relevant whenever the defendant denies possession. That's literally every gun possession case. And what that would mean is, similarity or not, if the government is right here, they can trot out half-decade-old convictions to say, well, he's a guy who can get a gun, he got it before, and in this case, not just got it before, got convicted of it, and here's an arsenal to show you, ladies and gentlemen, of all the guns that he and his prior Confederates from a half-decade ago had before. And that is dangerous. Now, I know that the court below did a 403 analysis here, and she concluded that it's dangerous, but, well, this is a felon in possession case, and after all, the members of the jury are going to know that this man is a felon. Well, that — But, sir, you're positing that this is the only evidence that your client possessed the gun that was found in the driveway, but there are other factors, including the fact that the woman who owned the house with the driveway testified that she was sweeping that driveway every day or two because it was a tree that dropped leaves, and that since the gun was found on top of the leaves, it meant that that gun had been deposited there within hours of when your client went running through the driveway. So we're not just looking at two guns by the same manufacturer. Well, Your Honor, I agree with you that there has to be a harmless error analysis. I disagree that the strength of this case was anywhere close to a strong one. This case, tried in front of an Eastern District jury in the wake of George Floyd, involved exclusively police witnesses when it came to the possession of the gun. There were three officers who testified. The sergeant is the only one who claimed that at night he was able to see the defendant running with a handle of a gun, a very small gun, sticking out of his pocket. I'm not sure I understand the relevance in the wake of George Floyd. Well, only that this was a close case. It was a tough case. Whenever you have a — whenever you have a — Your Honor's seen these trials. It's a police witness-driven case. They are hard for the government, especially when there was no forensics, even though the — even though the testimony was that he — that the perpetrator had touched the gun. There were no fingerprints, no DNA, no civilian witnesses other than the neighbor who just said it wasn't my gun. Nothing like that. And that — that's a tough case. And that's why the government tried to fill in with this conviction. And so this — this is not the — But, Mr. Goldman, you're — I mean, you're suggesting this is dangerous to say that sort of access means any prior experience with guns comes in. But in this case, I mean, the access point then I think leads to Judge LaValle's point, that this is not just any gun. This is a gun that is somewhat unique. It's a — it's a rare gun on the markets out there. And so why is this a dangerous case given those facts? First, the premise that this is a rare gun I don't think was established by the record. It's a 20-year-old gun, yes. But there is not — there was no testimony from any detective who was able to say — I thought there was a suggestion it was difficult to get, that it's not manufactured, hasn't been manufactured for 35 years, it's not legal in New York, it's relatively expensive. The difficult — the testimony was actually, Judge, the difficulty in getting guns was a general difficulty because guns are highly regulated. But you could have said that about a Ruger or any other gun. The government's brief cites that percentage that I — that fact that I mentioned, that 1 percent of a collection of guns over a substantial period were this gun. Was that in the record in the district court? That was not in the record in the district court. That was actually in a — records that we put in for — that we submitted in our brief. None of that was in front of the trial judge at all. That was in the briefing here where we said, hey, look, this gun is actually pretty available, and 1 percent may sound like a lot — not that much, but it — how — was there — there's no record about other guns being substantially more. These are street guns. They come up all the time. Raven was nothing new to me, and I was a prosecutor because they kept coming up. And same with Phoenix Arms. There is nothing unique about this gun, and it wasn't in the record before the trial court. And there isn't a single case, a single published case, where this theory has been authorized, where you can let in someone's prior conviction in a gun case, a half-decade-old conviction, and let it in to show that the defendant must have possessed a gun like that. There's not one published case that they can point to. I ask you to ask them. Your Honor, I see I'm out of time, I believe. Well, you've got two minutes for rebuttal, Mr. Kortman, so we'll hear from you again. Thank you. Thank you. Mr. Siegel.  May it please the Court. Jonathan Siegel for the United States. I also represented the government in the district court below. I think it's, in this case, it's particularly important to focus on the standard of review, which wasn't really touched on, that this is not just a case where the Court would need to find error, but would need to find manifest error. It would need to be that the decision of the district court was arbitrary and irrational, and not just wrong, but so wrong that it was an illegal abuse of discretion. In this case, Judge Ross wrote a careful decision, weighed the elements, and cited a decision of this Court, United States v. Slaughter, which was a unanimous summary order that concluded that where a defendant challenged that he possessed the gun at issue, that evidence that he had possessed other firearms on other occasions wasn't miscible. That was a case, it included Your Honor Judge Jacobs on the panel, that the defendant makes no effort to distinguish. In that case, there was no argument that it was the same kind of gun under the district court. Well, it was the summary order. It relied on a 40-year-old case. It was. It was the second. It was an opinion. It was an opinion, and yes, it was not a precedential opinion. But I don't think that it needs to be that a judge has to rely on a precedential opinion to not abuse its discretion. A summary order indicates that an old case still has vitality. That's right. I don't think that it is fair or proper to say, well, Judge Ross, you did rely on a decision where three judges of the Second Circuit thought this was simple enough to be decided by a summary order, but sorry, that's manifestly error. That's arbitrary. That's irrational. To go to the argument that your adversary has made, I mean, what's the sense of assuming that people have a, who carry guns, have a preference always to use the same brand, like they smoke the same brand of cigarettes or they like the same brand of breakfast cereal? I mean, the gun serves a purpose, and any brand of gun will do the job. Well, ultimately, as Judge Ross held, Judge Ross didn't allow this in for modus operandi or identification. She didn't find that it was sufficient to say that this kind of gun shows that he only uses that kind of gun or that's unique enough. What Judge Ross held and relied on slaughter and many other cases from this Court is that access to firearms is not something possessed by the general population. In the world, but particularly in New York City, it's not just that not everyone has a gun, but most people would not know where to go to get a gun. Yeah, but you're now arguing with the breadth that your adversary says it's kind of dangerous because then you can always bring in a prior conviction for gun possession just because it's unusual for people to possess guns. No. What I'm arguing is consistent with what this Court has repeatedly held, that access to firearms is a permissible basis to admit something under 404B, that it is relevant to possession, and then it is up to the district court's discretion to weigh the relevance versus the risk of prejudice. And we don't dispute that there is a risk of prejudice here, as Judge Ross found. But Judge Ross weighed that risk of prejudice. She conducted a careful Rule 403 balancing. And under the deference that is owed to Judge Ross and to any district court in that 403 analysis, it wasn't an abuse of discretion here. So may I ask you to address the questions that I was asking your adversary? If the circumstances show that the particular gun involved in both cases is a rarity, why doesn't the rarity indicating that the defendant, that the prior proof shows a preference on the part of the defendant for this particular gun, that this is what he wants in a gun, why doesn't that make it relevant as evidence of identity? Your Honor, I think it certainly could. That was our argument. That was one of our arguments in our pretrial motions for a basis for admission. So did the record below contain evidence of rarity? I forget whether it's your brief or the other brief. It must be your brief that cited this 1 percent, 1 percent of guns that were found were Raven 25s over a substantial period. That was not in the district court. That was initially cited in the defendant's brief to say that these are common. In response, we pointed out it's only 1 percent. That's not very common. The record before the district court was that Raven firearms hadn't been produced in 30 years approximately. There was testimony by a firearms expert that in New York City there basically is no legal firearms market and that even if there were a legal firearms market, Raven firearms were not commercially available. Well, in that case, why isn't this perfectly good evidence of identity in that it shows a preference of this defendant for this rare firearm that is infrequently, if it's not around much? Why is that not? I mean, you know, it's as if he had been found four years ago to possess, to be in possession of some cough drops that are made only in Argentina and are rarely found here. Your Honor, we agree with that, and that was our argument to the district court, but the district court in what I submit was it's... All right, but if it's a good argument to make in the district court, why isn't it a good argument in this court? I think if this court is convinced that these are sufficiently rare, which was our original argument, then that would be a basis to affirm. You put in the record contained evidence that it hadn't been manufactured since 1991. That's right, and that there was no market for these in New York City. Well, can I ask you to get to a point that Mr. Fodeman didn't get to in his oral argument, but certainly got to in his brief, which is that you're saying we should rely on slaughter and other published opinions from this circuit, and he's saying, well, this circuit's an outlier and becoming increasingly an outlier, and that we ought to revisit this. And I guess you, do you think this circuit is an outlier with respect to guns? No, Your Honor. None of the cases he cites address the issue of access to firearms. I will say that this circuit has more cases involving access to firearms than other circuits, which is not surprising given the restrictive gun laws and the lack, relative lack of guns in this circuit compared to other circuits. But other circuits have addressed the argument. We cited Seventh Circuit cases in our briefs. The cases that are cited by the defendant are all about can you use a prior possession of a firearm to show knowledge or intent. That wasn't what we were arguing for here, and that's really not an issue here. But I'm not aware of, and the defendant didn't cite, any cases where other circuits have rejected the access to firearms cases that are. I'm not very impressed by the force of that argument because, I mean, access, you know, the Internet, for one thing, has made it so much easier to find things that one is looking for. And while there are very restrictive gun laws in New York City, you go five miles outside of New York City, there are gun stores everywhere and gun markets. And not to mention the ability to travel to other states. The defendant was saying in his argument most people wouldn't know how to buy a gun in New York City. I've never had a gun. I have no interest in guns. But I think if I really wanted one and was desperate to get one, I could go to a bar in certain parts of town and ask, well, where can I get a gun? And I think it would take me ten minutes to find a source of a gun. So I'm not terribly impressed with the argument about access. It seems to me that the government's much stronger argument is one related to identity. And I don't know why the district court shunned away from it. But it seems to me to be a far stronger argument than access, which seems to me to be really quite easy. Well, Your Honor, we're certainly happy to be affirmed on any of those bases. But in terms of the access, I think this is what is recognized in the case law. And several treatises talk about it and the logic of it, to the extent that not everyone in the population can access an illegal firearm. And with all due respect, Your Honor, even if you thought I could find the bar where this is located. So you're saying as to access, that the fact that it's a Raven .25, that it's a rare gun, is irrelevant? It's just that the defendant knows a guy who knows how to buy a gun? Ultimately, under this Court's precedence, none of the cases that have relied on access have talked about the specific make or model. At most, they've talked about it's a semiautomatic handgun. They're .38 calibers. But in the first cases, we're probably not about rare guns. But, and I think that's what really shows the correctness of Judge Ross's decision, Judge Ross cited those cases and said, and here, this is an even stronger case because those are relatively rare. And I think focusing on that, where the Court closely followed this Court's precedent and said, this is even a stronger case. Judge Ross found it didn't reach the level of uniqueness for identification. But what that shows is a careful attention to precedent, a careful effort to balance the factors in a reasoned decision that is not arbitrary, that is not irrational. And under this Court's decades of precedent is not manifestly erroneous. I have another question, which is the – it's a different order. The fact of his arrest and his prior conviction seems to me to be irrelevant. What's pertinent here is the fact that he possessed the gun. And I wonder why the government – it seems to me it would be much more in keeping with the rules for the government to offer evidence of his possession. Simply to say that we want to show that he possessed a Raven 25, whatever it was, the predecessor of the Raven 25 or successor of the Raven 25 four years ago, without having to go into arresting him and conviction and so forth. Because the conviction – the conviction for gun possession is irrelevant except for the fact that it nails down the possession. Your Honor, thank you for asking that. And we agree 100 percent. The government didn't admit his conviction. We called the officer who was the arresting officer who testified. I patted him down. I found a gun. Or excuse me. I patted down. The other passenger found a gun. My partner patted down. The fact that he's being arrested – that he's being arrested shows his criminality. Well, it was the nature – that was the story of the finding of the gun. Criminality is irrelevant to your – to the force of your evidence. You wanted to show that he had a Raven. That's right. So we called a witness who explained the circumstances of finding the gun. But the government didn't admit and didn't argue that he was convicted of that. The defendant in closing arguments and I think possibly in opening arguments said he pleaded guilty to that, but the government never admitted that conviction. All right. Thank you. Thank you, Your Honors. We're now here for Mr. Foderman for two minutes of rebuttal. Thank you, Your Honors. A couple points. First, I want to go back to Judge LaValle and his question of identity. I direct your attention to Ravitch and Robinson. These are cases where prior convictions and prior possessions of guns were admitted, but in each of those cases and the other cases that's precedent in this case, the gun that we are talking about previously having was the gun, the gun. And what I mean by that, someone committed a robbery with a .38, and then they're arrested with a .38. It tends to show that they were the one who committed the crime, much like – But a .38 is extremely broad. And that was admissible in an en banc decision in this Court because it tended to show that he was involved in the crime, just like as if he had a mask or he had the clothing, it must be him, or just if there was something unique about the way he conducted it. Those go to issues of identity. If he was dressed in a clown outfit in the past, and this was committed by someone in a clown, that's identity. Nobody can say on the record here that there was something so unique about these guns that made it his calling card or that it tended to show in a case about identity that it was him. And I would also just remind you, Judge, for what it's worth, it's not the same gun. It's the difference between a Pontiac and a Buick. Yes, they're made by the same manufacturer or, in this case, on the same assembly line, but the successor and interest does not suggest – I mean, do we really think that Mr. Jackson is a guy who, on this record, is a guy who wants to have illegal guns, wanted to have it on this night, but he only does Phoenix Arms and their successor and interest? That's his preference, like, as you said, Marlboro.  He has a preference for a particular gun. He has a preference. It's not that he would only settle for it. It's just that he has – that he likes them. Or the company that acquired that gun. He probably likes that, too. And just one other point I just want – I just want to say. This slaughter case, you know, Your Honor, was spot on. Yes. It's – you were on the panel, Judge. And that is the only case that the Court relied upon in admitting this evidence. But take a close read. They rely on one case in slaughter. It's Zappola. It's a very quick opinion, summary order. Zappola, as you said, a 40-year-old case. And what are the facts of that case where they admitted guns on the premise of prior access? It was, again, the gun. Not access to any gun. Access to the gun. In Zappola, a witness testified that six months before this armed extortion, she had seen Mr. Zappola with a gun that very well might have been the gun. I got no issue with that. But that's not what we're talking about here. In this case – Well, it very well might have been it. Not necessarily was. Okay. Well, that's the weight of the evidence. Even I – I'm a defense attorney. Even I don't take exception to that. And if you have a gun that's Raven or Phoenix, considering they're made from the same machine parts, you could assume that they would look the same. But that is a different gun. It's not the case that you relied on in the slaughter case, where it is the gun. This is not – It's a different gun. But in Zappola, we don't know that it's a different gun. No, we know it's the same. The theory was it's the same gun because he wasn't arrested the first time. And then he has – so it goes to access. He could have the opportunity to commit the crime. That's the difference. I think – yes, I've expired. Thank you. Thank you, judges. Thank you for your time and consideration. We will reserve decision.